MICHAEL S. BROWN, SBN 083358
BROWN & SULLIVAN, LLP
1000 Marina Village Parkway, Suite 120
Alameda, CA 94501
Tel: (510) 521-1211
Fax: (510) 521-7879
Email: msb@brown-sullivan.com

Attorneys for Plaintiff
AVISHAI RON

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVISHAI RON,<br><br>Plaintiff,<br>v.<br><br>AU SOMMET LLC, a California limited liability company; JOHN J. SCHWARTZ, individually and as trustee of the John J. Schwartz and Carrie McNamara Schwartz Revocable Trust Dated February 24, 2015; CARRIE MCNAMARA SCHWARTZ also known as CARRIE S. SCHWARTZ, individually and as trustee of the John J. Schwartz and Carrie McNamara Schwartz Revocable Trust Dated February 24, 2015; and HEIDI BARRETT,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, QUIET TITLE, REFORMATION, RECEIVERSHIP, INJUNCTION AND ACCOUNTING<br>*(DEMAND FOR JURY TRIAL)* |

Plaintiff alleges:

JURISDICTION

1. Plaintiff AVISHAI RON ("**Plaintiff**") is and was at all times mentioned herein a citizen of the State of Texas.

2. Defendant AU SOMMET LLC ("**Sommet**") is and was from October 14, 2008 a limited liability company organized under the laws of the State of California having its principal place of business in the State of California.

3. Defendant JOHN J. SCHWARTZ, individually and as trustee of the John J. Schwartz and Carrie McNamara Schwartz Revocable Trust dated February 24, 2015 (collectively "**J. Schwartz**") is and was at all times mentioned herein a citizen of the State of California.

4. Defendant CARRIE MCNAMARA SCHWARTZ also known as CARRIE S. SCHWARTZ, individually and as trustee of the John J. Schwartz and Carrie McNamara Schwartz Revocable Trust dated February 24, 2015 (collectively "**C. Schwartz**") is and was at all times mentioned herein a citizen of the State of California.

5. Defendant HEIDI BARRETT ("**Barrett**") is and was at all times mentioned herein a citizen of the State of California.

6. The jurisdiction of this court over the subject matter of this action is predicated on 28 U.S.C. §1332. The amount in controversy exceeds $75,000, exclusive of interest and costs.

VENUE

7. All Defendants reside in this district.

GENERAL ALLEGATIONS

8. On or about August 1, 2008, at Defendant J. Schwartz's instruction, Plaintiff caused to be wired $200,000 in funds to the personal bank account of Defendant J. Schwartz for investment in a future winery operation now known as Defendant Sommet.

9. On or about August 14, 2008, Defendants J. Schwartz and C. Schwartz, husband and wife as community property, acquired real property commonly known as 4400 Atlas Peak Road, Napa, California and legally described in **Exhibit A** attached hereto and incorporated herein by reference (the "**Property**"). On or about May 4, 2015, a grant deed was recorded vesting the Property title in Defendants J. Schwartz and C. Schwartz, trustees of the John J. Schwartz and Carrie McNamara Schwartz Revocable Trust dated February 24, 2015.

10. On or about September 8, 2008, the members of Defendant Sommet , including, but not limited to Plaintiff and Defendants J. Schwartz and Barrett, entered into an operating agreement. Defendants J. Schwartz and Barrett are the designated co-managers under the operating agreement and at all relevant times thereafter have been the co-managers of Defendant Sommet.

11. On or about September 11, 2008, Plaintiff executed a Subscription Agreement for a

$250,000 investment in Defendant Sommet that Defendants J. Schwartz and Barrett, as co-managers of Defendant Sommet ,executed.

12. On September 30, 2008, at Defendant J. Schwartz's instruction, Plaintiff caused to be wired $50,000 in funds to the personal bank account of Defendant J. Schwartz for investment in Defendant Sommet.

13. On or about October 10, 2008, the members of Defendant Sommet entered into a second operating agreement which does not contain an integration provision or reference the September 8, 2008 operating agreement.

14. On or about October 14, 2008, Defendant Sommet's articles of organization were filed with the California Secretary of State.

15. Plaintiff held a 5% membership interest in Defendant Sommet at all times relevant herein until December 19, 2016, when Plaintiff acquired an additional 5% membership interest from another member, Gary Ventling ("**Ventling**"), resulting in a 10% membership interest in Defendant Sommet held by Plaintiff.

16. The September 8, 2008 and October 10, 2008 operating agreements of Defendant Sommet ("**Operating Agreements**") state that Plaintiff contributed $250,000 as capital and all other members contributed services.

17. The Operating Agreements provide that Defendant Sommet shall be jointly managed by Defendants J. Schwartz and Barrett who each hold a 42.5% membership interest in Defendant Sommet.

**<u>First Claim For Intentional Misrepresentation against Defendants Sommet, J. Schwartz and Barrett</u>**

18. Plaintiff incorporates by reference paragraphs 1 through 17 above as if fully set forth hereat.

19. In or about December 2016, in connection with Plaintiff's purchase of Ventling's 5% interest, Plaintiff was informed by Ventling, the former vice-president of finance of Defendant Sommet, that Plaintiff's $250,000 capital contribution was never deposited in Defendant Sommet's bank account or reflected on Defendant Sommet's financial records. Prior to that time Plaintiff had

no knowledge, suspicion or reason to know otherwise because Plaintiff was not in possession of the financial records of Defendant Sommet and relied on Defendant J. Schwartz's representation as co-manager of Defendant Sommet and the Operating Agreements.

20. In or about September 2008, Defendant J. Schwartz falsely represented to Plaintiff that the $250,000 was invested in Defendant Sommet.

21. The true facts are that the $250,000 was not invested in Defendant Sommet or recorded in the financial records of Defendant Sommet as confirmed by Ventling.

22. Defendant J. Schwartz knew when he made the representation to Plaintiff concerning the $250,000 investment in Defendant Sommet that the representation was false, and Defendant J. Schwartz made the representation with the intent to deceive Plaintiff and to induce Plaintiff to invest the $250,000 in Defendant Sommet.

23. Plaintiff believed Defendant J. Schwartz's representation regarding the investment of his $250,000 in Defendant Sommet and in reliance on the representation, Plaintiff was induced to make the investment. Plaintiff would not have made the investment if he had not relied on the representation by Defendant J. Schwartz.

24. Plaintiff is informed and believes and thereon alleges that Defendant Barrett, as co-manager, knew that Plaintiff's $250,000 was not deposited in Defendant Sommet's bank account and reflected in the financial records of Defendant Sommet, notwithstanding the Operating Agreements and the Subscription Agreement executed by her reflected such and took no action to rectify in furtherance of the conspiracy by ratifying and adopting the wrongful acts of Defendant J. Schwartz.

25. As a result of Defendant J. Schwartz's misrepresentation and Defendant Barrett's participation in the conspiracy, Plaintiff in his capacity as a member and Defendant Sommet have been collectively damaged in the sum of at least $250,000.

26. On or about March 9, 2017, Plaintiff, through counsel, requested documentation from Defendants Sommet and J. Schwartz to evidence Defendant J. Schwartz's deposit of Plaintiff's $250,000 in Defendant Sommet's bank account. Defendant J. Schwartz has refused and failed to produce any documentation.

27. On or about March 31, 2017, Plaintiff through counsel made the following efforts to

secure action from Defendant Sommet to pursue the claims against Defendants J. Schwartz, C. Schwartz and Barrett and delivered to counsel for Defendants Sommet and J. Schwartz a prior draft of this Complaint which Plaintiff proposed to file and demanded that Defendants J. Schwartz and Barrett, as co-managers, take action as is necessary for Defendant Sommet to prosecute the claims against Defendants J. Schwartz, C. Schwartz and Barrett. Defendants Schwartz, Barrett and Sommet refused, and continue to refuse, to prosecute this action. In so refusing to prosecute this action Defendants J. Schwartz and Barrett, as co-managers, did not act in good faith or in a reasonable belief that their refusal to commence this action was good business judgment or in the best interest of Defendant Sommet. Rather, this refusal by Defendants J. Schwartz and Barrett, as co-managers, was in the exercise of bad faith and breach of fiduciary duty to maintain and protect the interests of Defendant Sommet and Plaintiff.

28. If Plaintiff is successful in this action, a substantial benefit will result to Defendant Sommet on whose behalf this action is prosecuted and Plaintiff is entitled to his attorneys' fees incurred in prosecuting this action.

29. The conduct of Defendants J. Schwartz and Barrett was despicable, oppressive and malicious that subjected Plaintiff and Defendant Sommet to unjust hardship and injury in conscious disregard of Plaintiff's and Defendant Sommet's rights so as to justify an award of punitive damages.

**Second Claim for Negligent Misrepresentation Against Defendants Sommet, J. Schwartz and Barrett**

30. Plaintiff incorporates by reference paragraphs 1 through 22 and 24 through 29 above as though fully set forth hereat.

31. Defendant J. Schwartz, when he made the representation to Plaintiff concerning Plaintiff's $250,000 investment in Defendant Sommet, had no reasonable ground for believing that the representation was true and made the representation with the intent to induce Plaintiff to cause to be wired $250,000 to Defendant J. Schwartz's personal bank account.

**Third Claim for Concealment Against Defendants Sommet, J. Schwartz and Barrett**

32. Plaintiff incorporates by reference paragraphs 1 through 20, 22 and 25 through 29

above as though fully set forth hereat.

33. Defendants J. Schwartz and Barrett failed to reveal and suppressed the fact that the $250,000 was not to be invested in Defendant Sommet. The failure to disclose this fact was likely to mislead and did in fact mislead Plaintiff in light of the fact that the Operating Agreements showed Plaintiff's $250,000 investment as his capital contribution.

34. Defendants J. Schwartz and Barrett concealed the actual use of Plaintiff's $250,000 investment with the intent to induce Plaintiff to make the investment in reliance thereon. Plaintiff would not have made the investment if Defendants J. Schwartz and Barrett had disclosed the true use of Plaintiff's funds.

**Fourth Claim for Constructive Fraud Against Defendants Sommet, J. Schwartz and Barrett**

35. Plaintiff incorporates by reference paragraphs 1 through 34 above as though fully set forth hereat.

36. By virtue of Defendants J. Schwartz's and Barrett's position as a co-managers of Defendant Sommet, they owed a fiduciary duty to Plaintiff and Defendant Sommet, and by virtue of Plaintiff having placed confidence in the fidelity and integrity of Defendants J. Schwartz and Barrett in entrusting them with Plaintiff's $250,000, a confidential relationship existed at all times mentioned between Defendants J. Schwartz and Barrett and Plaintiff.

37. Despite having voluntarily accepted the trust and confidence reposed in them by Plaintiff with respect to Plaintiff's $250,000 wire deposits into Defendant J. Schwart's personal bank account, and in violation of this relationship of trust and confidence, Defendants J. Schwartz and Barrett abused the trust and confidence of Plaintiff by using the funds for other than investment in Defendant Sommet.

38. Plaintiff is informed and believes and thereon alleges that Defendant J. Schwartz used the $250,000 for personal use with the intent to deceive and defraud Plaintiff knowing that Plaintiff was a passive member of Defendant Sommet which was ratified and adopted by Defendant Barrett.

39. Plaintiff in fact placed confidence and reliance in Defendants J. Schwartz and Barrett until December 2016 when Ventling informed Plaintiff that his $250,000 was not contributed as

capital to Defendant Sommet in 2008 and that at the time Defendant J. Schwartz had informed Ventling that Plaintiff had contributed services to Defendant Sommet when Ventling asked Defendant J. Schwartz about Plaintiff's $250,000 capital contribution listed in the Operating Agreements. Plaintiff reasonably relied on Defendants J. Schwartz and Barrett in view of their co-manager role at Defendant Sommet.

**Fifth Claim for Conversion Against Defendants Sommet, J. Schwartz and Barrett**

40. Plaintiff incorporates by reference paragraphs 1 through 29 above as though fully set forth hereat.

41. Plaintiff is informed and believes and on that basis alleges that Defendant J. Schwartz took the $250,000 in funds paid by Plaintiff as a capital contribution to Defendant Sommet and converted the same to his own use.

42. Defendant J. Schwartz has denied he converted the funds for his own use and has refused to pay the funds to Defendant Sommet or provide documents to show the use of the funds for Defendant Sommet's benefit.

**Sixth Claim for Constructive Trust Against Defendants Sommet, J. Schwartz and C. Schwartz**

43. Plaintiff incorporates by reference paragraphs 1 through 17 above as though fully set forth hereat.

44. Plaintiff is informed and believes and on that basis thereon alleges that Defendants J. Schwartz and C. Schwartz used Plaintiff's $200,000 wired to Defendant J. Schwartz's personal bank account on August 1, 2008 toward their purchase of the Property on August 14, 2008.

45. Plaintiff further is informed and believes that some or all of the Property land and vineyards is owned by Defendant Sommet based on Ventling's statement to Plaintiff in December 2016 and Defendant Sommet's Balance Sheet dated December 31, 2008, which Plaintiff obtained from Ventling in December 2016. Pursuant to Section 1.8 of the Operating Agreements, Defendant Sommet's title to the Property shall be held in its name only.

46. By virtue of Defendants J. Schwartz's and C. Schwartz's wrongful acts, they hold the

Property or a portion thereof and any net income derived from the Property as constructive trustees for the benefit of Defendant Sommet.

47. On or about March 9, 2017, Plaintiff, through counsel, requested that Defendant J. Schwartz provide Plaintiff with all documentation concerning the Property acquisition by Defendants J. Schwartz and C. Schwartz.

48. Defendants J. Schwartz and C. Schwartz refused, and continue to refuse, Plaintiff's request for such documentation.

49. An accounting is necessary to determine the acquisition funding of the Property and the income and expenses of the Property to determine Defendant Sommet's interest in the Property and net income derived therefrom.

**Seventh Claim for Quiet Title Against Defendants Sommet, J. Schwartz and C. Schwartz**

50. Plaintiff incorporates by reference paragraphs 1 through 17 above as though fully set forth hereat.

51. Plaintiff is informed and believes and thereon alleges that Defendant Sommet is and has been an owner of all or a portion of the Property on the bases that Plaintiff's $200,000 was used by Defendants J. Schwartz and C. Schwartz to purchase the Property, and the Property land and vineyards are on Defendant Sommet's Balance Sheet dated December 31, 2008 as confirmed by Ventling in December 2016.

52. Defendants J. Schwartz and C. Schwartz claim an interest adverse to Defendant Sommet in the Property as record fee simple owners of the Property.

53. Plaintiff seeks to quiet title to the Property against adverse claims of Defendants J. Schwartz and C. Schwartz as of October 14, 2008, the date the articles of organization of Defendant Sommet were filed with the California Secretary of State.

**Eighth Claim for Reformation Against Defendants Sommet, J. Schwartz and C. Schwartz**

54. Plaintiff incorporates by reference paragraphs 1 through 17 above as though fully set forth hereat.

55. Plaintiff is informed and believes and thereon alleges that the failure of the August 14, 2008 and May 4, 2015 recorded deeds to the Property ("**Deeds**") to reflect Defendant Sommet's interest in the Property due to Plaintiff's $200,000 used to purchase the Property and the Property land and vineyards listed on Defendant Sommet's balance sheet as of December 31, 2008, as confirmed by Ventling, resulted from Defendant J. Schwartz's above wrongful acts and is in contravention of the Operating Agreements Section 1.8 prohibition against a member holding title to Defendant Sommet's property.

56. Defendant Sommet, although not vested in the Property deed, will nonetheless suffer pecuniary loss unless the Deeds are reformed.

57. In December 2016, Plaintiff discovered the error in the title to the Property when Ventling disclosed that Defendants J. Schwartz and C. Schwartz held the title to the Property which is listed on Defendant Sommet's December 31, 2008 Balance Sheet.

**Ninth Claim for Breach of Fiduciary Duty Against Defendants Sommet, J. Schwartz and Barrett**

58. Plaintiff incorporates by reference paragraphs 1 through 42 above as if fully set forth hereat.

59. Defendants J. Schwartz and Barrett are, and at all times herein mentioned were, co-managers and majority members of Defendant Sommet, and as such owed to Plaintiff and Defendant Sommet a duty of loyalty to account to Plaintiff and other members of Defendant Sommet and hold as trustee for Defendant Sommet property, profit or benefit derived by the co-managers from the use of Defendant Sommet's property and business opportunities, to comply with the terms of the Operating Agreements, and to act in good faith and fair dealing under Corporations Code §17704.09.

60. Plaintiff is informed and believes and thereon alleges that Defendants J. Schwartz and Barrett breached their fiduciary duty by Defendants J. Schwartz and C. Schwartz taking title to the Property belonging in whole or part to Defendant Sommet in violation of Section 1.8 of the Operating Agreements, by Defendant J. Schwartz taking a $467,938 credit to his 2008 capital account for services in violation of Section 2.1 of the Operating Agreements, by Defendant J. Schwartz making loans to Defendant Sommet at above market interest rates in violation of Section 4.7 of the Operating

Agreements, by not distributing "Net Cash From Operations" under Sections 8.1 and 14.34 of the Operating Agreements, by Defendant J. Schwartz's receipt of financial benefits to which he is not entitled under Corporations Code §§17701.10 and 17704.04 and excess distributions under Corporations Code §17704.06, by failure to provide Defendant Sommet's federal and state tax returns within 90 days after the fiscal tax year of Defendant Sommet in violation of Corporations Code §17704.10, by failure to account for Plaintiff's capital contribution of $250,000 on the books and records of Defendant Sommet, by failure to use Plaintiff's capital contribution of $250,000 for the benefit of Defendant Sommet, by allowing Defendant J. Schwartz to convert Plaintiff's $250,000 capital contribution, by violating Sections 2.4, 4.3, 4.5 and 4.7 of the Operating Agreements, by failing to provide requested business records to Plaintiff, by failing to acknowledge and record Plaintiff's 10% interest as of December 19, 2016 on the books and records of Defendant Sommet, by failing to notify the California Department of Alcoholic Beverage Control of Plaintiff's 10% interest pursuant to Business and Professions Code §23405.2(a)(1), by withholding California taxes on Plaintiff's distributions, and by interfering in Plaintiff's acquisition of Ventling's 5% interest in contradiction to Section 9.8 of the Operating Agreements. A true and correct copy of the Operating Agreements Sections 1.8, 2.1, 2.4, 4.3, 4.5, 4.6, 4.7, 8.1 and 14.34 are attached hereto collectively as **Exhibit B** and incorporated herein by reference.

61. As a direct and proximate result of Defendants J. Schwartz's and Barrett's breach of their fiduciary duty, Plaintiff and Defendant Sommet have been damaged in an amount to be ascertained but in excess of $250,000.

**Tenth Claim for Injunctive Relief Against Defendants Sommet, J. Schwartz and Barrett**

62. Plaintiff incorporates by reference paragraphs 1 through 24, 26 through 28, 42, 59 and 60 above as if fully set forth hereat.

63. Plaintiff is informed and believes and thereon alleges that Defendants J. Schwartz and Barrett, and each of them, wrongfully and unlawfully will continue to breach the Operating Agreements and the California Corporations Code by making unlawful distributions to themselves, paying excessive interest to Defendant J. Schwartz on the loan(s) to Defendant Sommet, failing to

distribute "Net Cash From Operations" in accordance with the Operating Agreements among other violative acts listed in paragraph 60 above.

64. Plaintiff is further informed and believes and thereon alleges that Defendants J. Schwartz and Barrett will seek to have Defendant Sommet pay their attorneys' fees and costs in defense of this action while the action is pending in violation of Section 4.6(c) of the Operating Agreements which only allows for indemnification "if the Manager is successful in such action."

65. Defendants J. Schwartz's and Barrett's conduct and threatened conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff and Defendant Sommet as it will have significant financial impact on the operations of Defendant Sommet and make recovery of damages unlikely.

66. Plaintiff has no adequate remedy at law for the damages currently being suffered or that are threatened as it will be impossible for Plaintiff to determine the precise amount of damages that Defendant Sommet and he indirectly as a member will suffer if Defendants J. Schwartz's and Barrett's conduct is not restrained.

**Eleventh Claim for Injunctive Relief Against Defendants Sommet, J. Schwartz and C. Schwartz**

67. Plaintiff incorporates by reference paragraphs 1 through 17 and 44 through 57 above as if fully set forth hereat.

68. Plaintiff is informed and believes and thereon alleges that Defendants J. Schwartz and C. Schwartz wrongfully and unlawfully hold 100% fee simple title to the Property which is wholly or partially owned by Defendant Sommet.

69. Plaintiff is informed and believes and thereon alleges that Defendants J. Schwartz and C. Schwartz might transfer, encumber, convey, assign, hypothecate or take other prejudicial action regarding the Property which conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Defendant Sommet as the Property is unique due to the land and vineyards and the recovery of damages against Defendants J. Schwartz and C. Schwartz may be unlikely.

70. Plaintiff has no adequate remedy at law due to the uniqueness of the Property and it

will be impossible for Plaintiff to determine the precise amount of damages that Defendant Sommet will suffer if their conduct is not restrained.

**Twelfth Claim for Appointment of Receiver Against Defendants Sommet, J. Schwartz and Barrett**

71. Plaintiff incorporates by reference paragraphs 1 through 66 above as if fully set forth hereat.

72. At all times herein mentioned, Defendants J. Schwartz and Barrett were and are in complete control and management of Defendant Sommet.

73. Contrary to the Operating Agreements and the California Corporations Code, Defendants J. Schwarz and Barrett have been abusing their authority and managing Defendant Sommet for their own benefit to enrich themselves as listed above in paragraph 60 to the exclusion of Plaintiff and the other members of Defendant Sommet.

74. Plaintiff is informed and believes and thereon alleges that unless a receiver is appointed and instructed to take control and possession of Defendant Sommet's Property and funds, including revenue, Defendants J. Schwartz and Barrett will continue to enrich themselves, fail to distribute the "Net Cash From Operations" to members and fail to comply with the Operating Agreements and the California Corporations Code.

**Thirteenth Claim for Declaratory Relief Against Defendants Sommet, J. Schwartz and C. Schwartz**

75. Plaintiff incorporates by reference paragraphs 1 through 17 and 44 through 57 above as if fully set forth hereat.

76. An actual controversy has arisen between Plaintiff and Defendants J. Schwartz and C. Schwartz concerning the respective rights and interests of Defendants Sommet, J. Schwartz and C. Schwartz in the Property in that Plaintiff contends that Defendant Sommet owns all or a portion of the Property, whereas Defendants J. Schwartz and C. Schwartz contend they own all of the Property.

77. Plaintiff desires a judicial determination of Defendant Sommet's rights and interest in the Property and a declaration that Defendant Sommet owns the Property in whole or part.

78. A judicial determination is necessary and appropriate at this time to protect Defendant Sommet's interest in the Property and be shown as record title owner of all or a portion of the

Property for income and tax benefits.

**<u>Fourteenth Claim for Declaratory Relief Against Defendants Sommet, J. Schwartz and Barrett</u>**

79. Plaintiff incorporates by reference paragraphs 1 through 42 and 59 through 64 above as if fully set forth hereat.

80. An actual controversy has arisen between Plaintiff and Defendants J. Schwartz and Barrett concerning the capital accounts, Defendant J. Schwartz's loans to Defendant Sommet, "Net Cash From Operations" disbursements to members of Defendant Sommet, and Plaintiff's 10% interest in Defendant Sommet in that Plaintiff contends the capital accounts are incorrect, Defendant J. Schwartz's loan amounts are incorrect and carry an excessive interest rate, "Net Cash From Operations" has not been disbursed in accordance with the Operating Agreements, and Plaintiff has a 10% interest in Defendant Sommet as of December 19, 2016, whereas Defendants J. Schwartz and Barrett dispute these contentions.

81. Plaintiff desires a judicial determination of the correct capital accounts, the correct loan balances and interest rates of Defendant J. Schwartz's loans to Defendant Sommet, the "Net Cash From Operations" amount which should have been disbursed by Defendant Sommet, and Plaintiff's 10% interest in Defendant Sommet as of December 19, 2016.

82. A judicial determination is necessary and appropriate at this time under the circumstances in order that Defendant Sommet's members' capital accounts are correct, Defendant Sommet is paying reasonable interest on the proper loan balances, Defendant Sommet disburses the "Net Cash From Operations" amount to Defendant Sommet's members, and Plaintiff's 10% interest in Defendant Sommet is reflected on the books and records as of December 19, 2016.

**<u>Fifteenth Claim for Accounting Against Defendants Sommet, J. Schwartz and Barrett</u>**

83. Plaintiff incorporates by reference paragraphs 1 through 82 above as if fully set forth hereat.

84. The balance sheets for Defendant Sommet list "notes payable" to Defendant J. Schwartz, land and vineyards and capital accounts.

85. The amount of money loaned by Defendant J. Schwartz to Defendant Sommet and the payments made by Defendant Sommet to Defendant J. Schwartz cannot be ascertained without an accounting of each loan disbursement by Defendant J. Schwartz to Defendant Sommet and each payment of principal and interest by Defendant Sommet to Defendant J. Schwartz.

86. The income and expenses of the land and vineyards listed on Defendant Sommet's Balance Sheets cannot be ascertained without an accounting.

87. Defendant Sommet's members' capital accounts cannot be ascertained without an accounting.

88. Defendant Sommet's federal tax return Schedule F losses cannot be ascertained without an accounting.

89. Defendant Sommet's federal tax return Statement 3 deductions cannot be ascertained without an accounting.

90. Plaintiff, through counsel, has demanded that Defendants Sommet, J. Schwartz and Barret account for the aforementioned items but Defendants have failed and refused and continues to fail and refuse to render an accounting.

**<u>Sixteenth Claim for Breach of Contract Against Defendants Sommet, J. Schwartz and Barrett</u>**

91. Plaintiff incorporates by reference paragraphs 1 through 17 and 60 above as if fully set forth hereat.

92. Plaintiff is informed and believes and thereon alleges that Defendants J. Schwartz and Barrett have breached the Operating Agreements by Defendants J. Schwartz and C. Schwartz taking title to the Property owned wholly or in part by Defendant Sommet in violation of Section 1.8, by Defendant J. Schwartz taking a $467,938 credit to his 2008 capital account for services in violation of Section 2.1, by Defendant J. Schwartz making loans to Defendant Sommet at above market interest rates in violation of Section 4.7, by not distributing "Net Cash From Operations" under Sections 8.1 and 14.34, and by violating Sections 2.4, 4.3, 4.5 and 4.7, including but not limited to Plaintiff's $250,000 capital contribution.

93. Plaintiff has performed each and every obligation required by him under the Operating

Agreements.

94. As a direct and proximate result of Defendants J. Schwartz's and Barrett's breaches of the Operating Agreements, Defendant Sommet has been damaged in an amount to be ascertained but in an amount in excess of $250,000.

WHEREFORE, Plaintiff prays judgment as follows:

<u>First, Second, Third, Fourth, Fifth, Ninth and Sixteenth Claims Against Defendants Sommet, J. Schwartz and Barrett</u>:

1. For damages in excess of $250,000;
2. For prejudgment interest at 10% per annum;
3. For punitive damages;

<u>Sixth Claim Against Defendants Sommet, J. Schwartz and C. Schwartz</u>:

4. For an order declaring that Defendants J. Schwartz and C. Schwartz hold the Property or a portion thereof according to proof in trust for Defendant Sommet;
5. For an order compelling Defendants J. Schwartz and C. Schwartz to convey to Defendant Sommet the Property or a portion thereof according to proof;
6. For an order granting possession of the Property to Defendant Sommet;
7. For an accounting of all monies owing to Defendant Sommet;
8. For damages in the amount of all monies found owing to Defendant Sommet;

<u>Seventh Claim Against Defendants Sommet, J. Schwartz and C. Schwartz</u>:

9. That Defendant Sommet is the owner in fee simple of the Property or a portion thereof according to proof;

<u>Eighth Claim Against Defendants Sommet, J. Schwartz and C. Schwartz</u>:

10. For the reformation of the Property Deeds to reflect Defendant Sommet's ownership interest according to proof;

<u>Tenth Claim Against Defendants Sommet, J. Schwartz and Barrett</u>:

11. For an order requiring Defendants J. Schwartz and Barrett to show cause, if any they may have, why they should not be enjoined as set forth in the Complaint, during the pendency of

this action;

12. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them from breaching the Operating Agreement and California Corporations Code by making unlawful distributions to themselves, paying excessive interest to Defendant J. Schwartz, failing to distribute "Net Cash From Operations", paying their attorneys' fees and costs in defense of this action from Defendant Sommet's funds, and other violative acts listed in paragraph 60 above;

Eleventh Claim Against Defendants Sommet, J. Schwartz and C. Schwartz:

13. For an order requiring Defendants to show cause, if any they have, why they should not be enjoined as set forth in the Complaint, during the pendency of this action;

14. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants, and each of them from transferring, encumbering, conveying, assigning, hypothecating or taking any other action to prejudice Defendant Sommet's ownership interest in the Property;

Twelfth Claim Against Defendants Sommet, J. Schwartz and Barrett:

15. That a receiver be appointed to take over and manage the business and affairs of Defendant Sommet and to preserve its assets pending judgment in this action.

Thirteenth Claim Against Defendants Sommet, J. Schwartz and C. Schwartz:

16. For a declaration that Defendant Sommet is the owner of the Property, in whole or in part;

Fourteenth Claim Against Defendants Sommet, J. Schwartz and Barrett:

17. For a declaration of the correct capital accounts of Defendant Sommet's members, the correct balances and reasonable rate of interest on Defendant J. Schwartz's loans to Defendant Sommet, the disbursement amount of "Net Cash From Operations" by Defendant Sommet and Plaintiff's 10% interest as of December 19, 2016 in Defendant Sommet;

Fifteenth Claim Against Defendants Sommet, J. Schwartz and Barrett:

18. For an accounting between Plaintiff and Defendants;

19. For payment to Plaintiff and Defendant Sommet of the amounts due from Defendants as a

result of the accounting;

20. Prejudgment interest at 10% per annum;

All Claims:

21. For attorneys' fees;

22. For costs; and

23. For such other and further relief as the court may deem proper.

BROWN & SULLIVAN, LLP

Dated: April 13, 2017

/s/ Michael S. Brown
Attorneys for Plaintiff

Michael S. Brown (SBN 083358)
BROWN & SULLIVAN, LLP
1000 Marina Village Parkway, Suite 120
Alameda, CA 94501
E-mail: msb@brown-sullivan.com
Tel: (510) 521-1211 ext. 203

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

BROWN & SULLIVAN, LLP

/s/ Michael S. Brown
Attorneys for Plaintiff

## VERIFICATION

I, Avishai Ron, am the Plaintiff in this action. I have read the foregoing COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, QUIET TITLE, REFORMATION, RECEIVERSHIP, INJUNCTION AND ACCOUNTING *(DEMAND FOR JURY TRIAL)* and I understand the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 04-13-17

[signature]
AVISHAI RON

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF NAPA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

COMMENCING at a nail and tag stamped LS 4510 at the Southwest corner of Parcel One as shown on Map No. 4208 entitled "Parcel Map of the Lands of Chung R. and Josetta L. Pai", filed December 9, 1988 in Book 16 of Parcel Maps at pages 74-75 in the office of the County Recorder of said Napa County, said point being on the centerline of Atlas Peak Road and further described as being the Northwest corner of that certain tract 30.24 acre tract of land conveyed to Robert L. and Donna T. Sauers, as Trustees of the Sauers Family Trust, recorded September 18, 1991 under Series Number 1991 027570 of Official Records of Napa County; thence along said South line of Parcel One and the North line of Sauers, South 87° 29' 15" East 31.29 feet to a rebar tagged LS 4510 on the Easterly line of Strip "Y" as shown on said map, said point being on a curve; thence leaving said South line of Parcel One Southeasterly along the arc of a non-tangent curve to the right, the center of which bears South 78° 18' 07" West having a radius of 120.00 feet through a central angle of 12° 57' 01" an arc length of 27.12 feet; thence North 89° 07' 30" East 271.06 feet; thence North 0° 52' 30" East 34.09 feet; thence North 89° 35' 00" East 183.56 feet to the East line of said Parcel One from which a rebar tagged LS 4510 bears South 0° 24' 34" West 32.63 feet; thence along said East line of Parcel One, North 0° 24' 34" East 2603.35 feet to a rebar tagged LS 4510 at the Northwest corner of said Parcel One as shown on said map; thence along the Northwesterly and Westerly lines of Parcel One, South 47° 34' 44" West 1290.12 feet to a rebar tagged LS 4510; thence South 0° 26' 25" West 1182.64 feet to a rebar tagged LS 4510; thence South 37° 55' 21" West 30.00 feet to the centerline of Atlas Peak Road as shown on said map; thence Southeasterly along the centerline of Atlas Peak Road as shown on said map to the point of beginning, as granted in the document recorded April 9, 1993 as Series Number 1993-0011167 of Official Records of Napa County.

APN 032-540-037

**EXHIBIT A**

# OPERATING AGREEMENT

# OF

# AU SOMMET LLC,
a California limited liability company

THE MEMBERSHIP INTERESTS REPRESENTED BY THIS DOCUMENT HAVE NOT BEEN REGISTERED UNDER ANY SECURITIES LAWS AND THE TRANSFERABILITY OF SUCH INTERESTS IS RESTRICTED. SUCH INTERESTS MAY NOT BE SOLD, ASSIGNED OR TRANSFERRED, NOR WILL ANY ASSIGNEE, VENDEE, TRANSFEREE OR ENDORSEE THEREOF BE RECOGNIZED AS HAVING ACQUIRED ANY SUCH INTERESTS BY THE ISSUER FOR ANY PURPOSES, UNLESS (1) A REGISTRATION STATEMENT UNDER THE SECURITIES ACT OF 1933, AS AMENDED, WITH RESPECT TO SUCH INTERESTS SHALL THEN BE IN EFFECT AND SUCH TRANSFER HAS BEEN QUALIFIED UNDER ALL APPLICABLE STATE SECURITIES LAWS, OR (2) THE AVAILABILITY OF AN EXEMPTION FROM SUCH REGISTRATION AND QUALIFICATION SHALL BE ESTABLISHED TO THE SATISFACTION OF COUNSEL TO THE COMPANY.

THE INTERESTS REPRESENTED BY THIS DOCUMENT ARE SUBJECT TO FURTHER RESTRICTION AS TO THEIR SALE, TRANSFER, HYPOTHECATION, OR ASSIGNMENT AS SET FORTH IN THE OPERATING AGREEMENT AND AGREED TO BY EACH MEMBER. SAID RESTRICTION PROVIDES, AMONG OTHER THINGS, THAT NO INTEREST MAY BE TRANSFERRED WITHOUT FIRST OFFERING SUCH INTEREST TO THE COMPANY, AND THAT NO VENDEE, TRANSFEREE, ASSIGNEE, OR ENDORSEE OF A MEMBER SHALL HAVE THE RIGHT TO BECOME A SUBSTITUTED MEMBER WITHOUT THE CONSENT OF THE MANAGERS WHICH CONSENT MAY BE GIVEN OR WITHHELD IN THE SOLE AND ABSOLUTE DISCRETION OF THE MANAGERS.

Dated: September 8, 2008

EXHIBIT B

# OPERATING AGREEMENT

# OF

# AU SOMMET LLC,
## a California limited liability company

THE MEMBERSHIP INTERESTS REPRESENTED BY THIS DOCUMENT HAVE NOT BEEN REGISTERED UNDER ANY SECURITIES LAWS AND THE TRANSFERABILITY OF SUCH INTERESTS IS RESTRICTED. SUCH INTERESTS MAY NOT BE SOLD, ASSIGNED OR TRANSFERRED, NOR WILL ANY ASSIGNEE, VENDEE, TRANSFEREE OR ENDORSEE THEREOF BE RECOGNIZED AS HAVING ACQUIRED ANY SUCH INTERESTS BY THE ISSUER FOR ANY PURPOSES, UNLESS (1) A REGISTRATION STATEMENT UNDER THE SECURITIES ACT OF 1933, AS AMENDED, WITH RESPECT TO SUCH INTERESTS SHALL THEN BE IN EFFECT AND SUCH TRANSFER HAS BEEN QUALIFIED UNDER ALL APPLICABLE STATE SECURITIES LAWS, OR (2) THE AVAILABILITY OF AN EXEMPTION FROM SUCH REGISTRATION AND QUALIFICATION SHALL BE ESTABLISHED TO THE SATISFACTION OF COUNSEL TO THE COMPANY.

THE INTERESTS REPRESENTED BY THIS DOCUMENT ARE SUBJECT TO FURTHER RESTRICTION AS TO THEIR SALE, TRANSFER, HYPOTHECATION, OR ASSIGNMENT AS SET FORTH IN THE OPERATING AGREEMENT AND AGREED TO BY EACH MEMBER. SAID RESTRICTION PROVIDES, AMONG OTHER THINGS, THAT NO INTEREST MAY BE TRANSFERRED WITHOUT FIRST OFFERING SUCH INTEREST TO THE COMPANY, AND THAT NO VENDEE, TRANSFEREE, ASSIGNEE, OR ENDORSEE OF A MEMBER SHALL HAVE THE RIGHT TO BECOME A SUBSTITUTED MEMBER WITHOUT THE CONSENT OF THE MANAGERS WHICH CONSENT MAY BE GIVEN OR WITHHELD IN THE SOLE AND ABSOLUTE DISCRETION OF THE MANAGERS.

Dated: October 10, 2008

name certificates and similar filings, and any amendments thereto, that the Managers consider appropriate or advisable.

1.4. Business of the Company. Notwithstanding the purpose of the Company specified in the Articles, the Company will not, without the consent of all Members, engage in any business other than the business of growing grapes and related farming activities, and producing and selling wine and related products, and activities directly related to the foregoing business as may be necessary or advisable in the reasonable opinion of the Managers to further such business.

1.5. Principal Place of Business. The principal place of business of the Company shall be 135 Camino Dorado, Suite 8, Napa, California 94558. The Managers may change the principal place of business of the Company to any other place within or without the State of California upon ten (10) Business Days notice to the Members.

1.6. Term. The term of the Company shall commence on the date the Articles were filed in the office of the Secretary of State of California in accordance with the Act and shall continue until the winding up and liquidation of the Company and its business is completed following a Liquidating Event, as provided in Article X hereof.

1.7. Agent for Service of Process; Office. The registered agent for service of process of the Company shall be John Schwartz, or any successor as appointed by the Managers in accordance with the Act. The registered office of the Company in the State of California is located at 135 Camino Dorado, Suite 8, Napa, California 94558.

1.8. Title to Property. All property owned by the Company shall be owned by the Company as an entity and no Member shall have any ownership interest in such property in its individual name or right, and each Member's interest in the Company shall be personal property for all purposes. Except as otherwise provided in this Agreement, the Company shall hold all of its property in the name of the Company and not in the name of any Member.

1.9. Addresses of the Members. The respective addresses of the Members are set forth on Exhibit A attached hereto. A Member may change his or her address upon notice to the Managers.

ARTICLE II: MEMBERS' CAPITAL CONTRIBUTIONS

2.1. Initial Capital Contributions. Each Member shall contribute to the capital of the Company, as each Member's initial Capital Contribution the money, property and/or services specified in Exhibit A attached hereto and incorporated herein by this reference. In the case of any Member contributing services in exchange for an Interest, each such Member agrees that such Interest represents an interest in future profits of the Company, if any, and all Members agree that any Member contributing services in exchange for an Interest shall not receive any credit to his or her Capital Account in connection with such services and such Member would not be entitled to any distribution in connection with such services if the Company were dissolved immediately after the initial Capital Contributions set forth in this Section 2.1.

2.2. Additional Capital Contributions. No Member shall be required to make any additional Capital Contributions. To the extent approved by the Managers from time to time, the Members may be permitted to make additional Capital Contributions if and to the extent they so desire, and if the Managers determine that such additional Capital Contributions are necessary or appropriate for the conduct of the Company's business, including without limitation, expansion or diversification. In such event, the Members shall have the opportunity, but not the obligation, to participate in such additional Capital Contributions on a pro rata basis in accordance with their respective Interests. Each Member shall receive a credit to his or her Capital Account in the amount of any additional Capital Contribution.

2.3. Withdrawal. No Interest Holder shall demand or receive a return of his or her Capital Contributions without the consent of all Members.

2.4. No Interest. No Interest Holder shall receive any interest, salary or drawing with respect to his or her Capital Contributions or his or her Capital Account or for services rendered on behalf of the Company or otherwise in his or her capacity as a Member or Interest Holder, except as otherwise provided in this Agreement.

ARTICLE III: MEMBERS

3.1. Limited Liability. Except as otherwise expressly provided by this Agreement, an Assumption Agreement, or the Act, no Member shall be liable under any judgment of a court, or in any other manner, for the debts, liabilities, contracts, or any other obligations of the Company whether that liability or obligation arises in contract, tort or otherwise.

3.2. Rights or Powers. The Members shall not have any right or power to take part in the management or control of the Company or its business and affairs or to act for or bind the Company in any way.

3.3. Voting Rights. The Members shall have the right to vote on the matters specifically reserved for their approval or consent which are set forth in this Agreement.

3.4. Withdrawal, Resignation or Retirement. Any Member, whether or not under an obligation to render services to the Company, may withdraw, resign or retire as a Member at any time upon written notice to the Company, without prejudice to the rights, if any, of the Company or the other Members under any contract to which the withdrawing, resigning or retiring Member is a party. In the event of such withdrawal, resignation or retirement, such Member shall cease to be a Member of the Company, and shall thereafter be an Interest Holder only unless such Member's Interest is purchased by the Company and/or remaining Members as provided in Article IX. Each Member acknowledges and agrees that the conversion of such Member's Interest to that of an Interest Holder upon the occurrence of any of the foregoing events, is not unreasonable under the circumstances existing as of the date hereof.

4.3. Meetings of Managers. Meetings of the Managers may be called by any Manager. All meeting shall be held upon four (4) Business Days advance notice by mail or forty-eight (48) hours notice (or upon such shorter notice period if necessary under the circumstances) delivered personally or by telephone, telegraph or facsimile. A notice need not specify the purpose of any meeting. Notice of a meeting need not be given to any Manager who signs a waiver of notice or a consent to holding of the meeting (which waiver or consent need not specify the purpose of the meeting) or an approval of the minutes thereof, whether before or after the meeting, or who attends the meeting without protesting, prior to its commencement, the lack of notice to such Manager. All such waivers, consents and approvals shall be filed with the Company records or made a part of the minutes of the meeting. A majority of the Managers present, whether or not a quorum is present, may adjourn any meeting to another time and place. If the meeting is adjourned for more than twenty-four (24) hours, notice of any adjournment shall be given prior to the time of the adjourned meeting to the Managers who are not present at the time of the adjournment. Meetings of the Managers may be held at any place within or without the State of California which has been designated in the notice of the meeting or at any place as may be approved by the Managers. Managers may participate in a meeting through use of conference telephone or similar communications equipment, so long as all Managers participating in such meeting can hear one another. Participation in a meeting in such manner constitutes a presence in person at such meeting. A majority of the Managers constitutes a quorum of the Managers for the transaction of the business. Except to the extent that this Agreement expressly requires the approval of all Managers, every act or decision done or made by a majority of the Managers present at a meeting duly held at which a quorum is present is the act of the Managers. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of Managers, if any action taken is approved by at least a majority of the required quorum for such meeting. The Managers shall maintain written minutes of all meetings.

Any action required or permitted to be taken by the Managers may be taken by the Managers without a meeting, if a majority of the Managers individually or collectively consents in writing to such action, unless the action requires the unanimous vote of the Managers, in which case all Managers must consent in writing. Such action by written consent shall have the same force and effect as a majority vote or unanimous vote, as applicable, of such Managers.

The provisions of this Section 4.3 govern meetings of the Managers if the Managers elect, in their discretion, to hold meetings. However, nothing in this Section 4.3 or in this Agreement is intended to require that meetings of Managers be held, it being the intent of the Members that meetings of Managers are not required.

4.4. Right to Rely on Managers.

(a) Any Person dealing with the Company may rely (without duty of further inquiry) upon a certificate signed by any Manager as to:

(1) The identity of the Managers or any Member;

(2) The existence or nonexistence of any fact or facts which constitute a condition precedent to acts by the Managers or which are in any other manner germane to the affairs of the Company;

(3) The Persons who are authorized to execute and deliver any instrument or document of the Company; or

(4) Any act or failure to act by the Company or any other matter whatsoever involving the Company or any Member.

(b) Unless there is only one (1) Manager of the Company pursuant to the terms of this Agreement, in which case only such Manager's signature shall be necessary and sufficient, the signature of any two (2) Managers shall be necessary and sufficient to convey title to any real property owned by the Company or to execute any promissory notes, trust deeds, mortgages, or other instruments of hypothecation, and all of the Members agree that a copy of this Agreement may be shown to the appropriate parties in order to confirm the same. All of the Members do hereby appoint the Managers as their attorney-in-fact for the execution of any or all of the documents described in this Section 4.4(b).

4.5. Restrictions on Authority of Managers. The Managers shall not have the authority to, and covenant and agree that they shall not, do any of the following acts without the unanimous consent of the Members:

(a) Knowingly do any act in contravention of this Agreement;

(b) Cause or permit the Company to engage in any activity that is not consistent with the purpose of the Company as set forth in Section 1.4 hereof;

(c) Knowingly do any act which would make it impossible to carry on the ordinary business of the Company, except as otherwise provided in this Agreement; or

(d) Possess Property, or assign rights in specific Property, for other than a Company purpose; or

(e) Knowingly perform any act that would subject any Member to liability for any debt, obligation or liability of the Company in any jurisdiction.

4.6. Indemnification of Managers.

(a) The Company, its receiver, or its trustee (in the case of its receiver or trustee, to the extent of Company Property) shall indemnify, save harmless, and pay all judgments and claims against any Manager or any trustee, officer or director of any Manager relating to any liability or damage incurred by reason of any act performed or omitted to be performed by the Manager, trustee, officer or director in connection with the business of the Company, including attorneys' fees incurred by the Manager, trustee, officer or director in connection with the defense of any action based on any such act or

omission, which attorneys' fees may be paid as incurred, including all such liabilities under federal and state securities laws (including the Securities Act of 1933, as amended) as permitted by law.

(b) The Company, its receiver, or its trustee (in the case of its receiver or trustee, to the extent of Company Property) shall indemnify and hold harmless, to the maximum extent permitted by law, each Manager and Interest Holder from and against any and all liabilities, sums paid in settlement of claims (if such settlement is consented to by the Managers), obligations, charges, actions (formal or informal), claims (including, without limitation, claims for personal injury under any theory or for real or personal property damage), liens, taxes, administrative proceedings, losses, damages (including, without limitation, punitive damages), penalties, fines, court costs, administrative service fees, response and remediation costs, stabilization costs, encapsulation costs, treatment, storage or disposal costs, groundwater monitoring or environmental study, sampling or monitoring costs, other causes of action, and any other costs and reasonable expenses (including, without limitation, reasonable attorneys', experts', and consultants' fees and disbursements and investigating, laboratory and data review fees) imposed upon or incurred by any Manager or Interest Holder (whether or not indemnified against by any other party) arising from and after the date of this Agreement directly or indirectly out of:

(1) the past, present, or future treatment, storage, disposal, generation, use, transport, movement, presence, release, threatened release, spill, installation, sale, emission, injection, leaching, dumping, escaping, or seeping of any Hazardous Substances, material containing or alleged to contain Hazardous Substances at or from any past, present, or future properties or assets of the Company; or

(2) the violation or alleged violation by the Company or any third party of any Environmental Laws with regard to the past, present, or future ownership, operation, use, or occupying of any property or asset of the Company.

(c) In the event of any action by an Interest Holder against any Manager, including a Company derivative suit, the Company shall indemnify, save harmless, and pay all expenses of the Manager, including attorneys' fees, incurred in the defense of such action, if the Manager is successful in such action.

(d) The Company shall indemnify, save harmless, and pay all expenses, costs, or liabilities of any Manager who for the benefit of the Company makes any deposit, acquires any option, or makes any other similar payment or assumes any obligation in connection with any property proposed to be acquired by the Company and who suffers any financial loss as the result of such action.

(e) Notwithstanding the provisions of Sections 4.6(a), 4.6(b), 4.6(c), and 4.6(d) above, no Manager or Interest Holder shall be indemnified from any liability for fraud, bad faith, willful misconduct, or gross negligence.

(f) Notwithstanding anything to the contrary in any of Sections 4.6(a), 4.6(b), 4.6(c) and 4.6(d) above, in the event that any provision in any of such Sections is

determined to be invalid in whole or in part, such Section shall be enforced to the maximum extent permitted by law.

4.7. Compensation and Loans.

(a) Compensation and Reimbursement. Except as otherwise provided in this Section 4.7, no Manager or Affiliate shall receive any salary, fee, or draw for services rendered to or on behalf of the Company, nor shall any Manager be reimbursed for any expenses incurred by such Manager on behalf of the Company.

(b) Expenses. Each Manager or its respective Affiliate may charge the Company for any direct expenses reasonably incurred in connection with the Company's business.

(c) Compensation. In consideration of its performance of services on behalf of the Company, the Managers may receive from the Company, as guaranteed payments within the meaning of Code Section 707(c) and not as distributions, a reasonable management fee based on the time devoted to Company business as may be determined by the Managers from time to time.

(d) Loans. Any Person may, with the consent of the Managers, lend or advance money to the Company. If any Member shall make any loan or loans to the Company or advance money on its behalf, the amount of any such loan or advance shall not be treated as a Capital Contribution but shall be a debt due from the Company. The amount of any such loan or advance by a lending Member shall be repayable out of the Company's cash and shall bear interest at such rate as the Managers and the lending Member shall agree but not in excess of the maximum rate permitted by law. If a Manager, or an Affiliate of a Manager, is the lending Member, the rate of interest shall be determined by the Managers taking into consideration, without limitation, prevailing interest rates and the interest rates the lender is required to pay in the event such lender has itself borrowed funds to loan or advance to the Company and the terms and conditions of such loan, including the rate of interest, shall be no less favorable to the Company than if the lender had been an independent third party. None of the Members shall be obligated to make any loan or advance to the Company.

4.8. Limited Liability of Managers. No Person who is a Manager of the Company shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the Company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a Manager of the Company.

ARTICLE V: MANAGERS

5.1. Number, Term and Qualification. The Company shall have two (2) Managers. John Schwartz and Heidi Barrett are appointed as Managers. The number of Managers may change from time to time as provided herein, provided that in no instance shall there be less than one (1) Manager and provided further that if the number of Managers is: (i) increased from one (1) to more than one (1), or (ii) reduced from more

7.5. Other Allocation Rules.

(a) For purposes of determining the Profits, Losses, or any other items allocable to any period, Profits, Losses, and any such other items shall be determined on a daily, monthly, or other basis, as determined by the Managers using any permissible method under Code Section 706 and the Regulations thereunder.

(b) All allocations to the Interest Holders pursuant to this Article VII shall, except as otherwise provided, be divided among them in proportion to the Interests held by each.

(c) The Members are aware of the income tax consequences of the allocations made by this Article VII and hereby agree to be bound by the provisions of this Article VII in reporting their shares of Company income and loss for income tax purposes.

(d) Solely for purposes of determining an Interest Holder's proportionate share of the "excess nonrecourse liabilities" of the Company within the meaning of Regulations Section 1.752-3(a)(3), the Interest Holders' interests in Company profits are in proportion to their respective Interests.

7.6. Tax Allocations: Code Section 704(c). In accordance with Code Section 704(c) and the Regulations thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall, solely for tax purposes, be allocated among the Interest Holders so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its initial Gross Asset Value (computed in accordance with subparagraph (a) of the definition of "Gross Asset Value" below).

In the event the Gross Asset Value of any Company asset is adjusted pursuant to subparagraph (b) of the definition of "Gross Asset Value" below, subsequent allocations of income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Gross Asset Value in the same manner as under Code Section 704(c) and the Regulations thereunder.

Any elections or other decisions relating to such allocations shall be made by the Managers in any manner that reasonably reflects the purpose and intention of this Agreement. Allocations pursuant to this Section 7.6 are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Person's Capital Account or share of Profits, Losses, other items, or distributions pursuant to any provision of this Agreement.

ARTICLE VIII: DISTRIBUTIONS

8.1. Net Cash From Operations. Except as otherwise provided in Article X hereof, Net Cash From Operations, if any, shall be distributed to the Interest Holders at

such times as the Managers may determine but in no event later than the ninetieth (90th) day after the end of each fiscal year.

8.2. Net Cash From Sales or Refinancings. Except as otherwise provided in Article X hereof, Net Cash From Sales or Refinancings may be distributed to the Interest Holders, at such times as the Managers may determine.

8.3. Division Among Interest Holders. All distributions to the Interest Holders pursuant to Section 8.1 shall be divided among them in proportion to the reasonably anticipated allocation of Profits for the Fiscal Year in which such distributions are made as reasonably estimated by the Managers. All distributions to the Interest Holders pursuant to Section 8.2 shall be divided among them in proportion to the Interests held by each.

8.4. Amounts Withheld. All amounts withheld pursuant to the Code or any provision of any state or local tax law with respect to any payment, distribution or allocation to the Company, or the Interest Holders shall be treated as amounts distributed to the Interest Holders pursuant to this Article VIII for all purposes under this Agreement. The Managers are authorized to withhold from distributions, or with respect to allocations, to the Interest Holders and to pay over to any federal, state or local government any amounts required to be so withheld pursuant to the Code or any provisions of any other federal, state or local law and shall allocate any such amounts to the Interest Holders with respect to which such amount was withheld.

8.5. Form of Distribution. A Member, regardless of the nature of the Member's Capital Contribution, has no right to demand and receive any distribution from the Company in any form other than money. Except as provided in Section 10.4, no Member may be compelled to accept from the Company a distribution of any asset in kind in lieu of a proportionate distribution of money being made to other Members and no Member may be compelled to accept a distribution of any asset in kind.

8.6. Restriction of Distributions.

(a) No distribution shall be made if, after giving effect to the distribution:

(1) The Company would not be able to pay its debts as they become due in the usual course of business; or

(2) The Company's total assets would be less than the sum of its total liabilities plus, unless this Agreement provides otherwise, the amount that would be needed, if the Company were to be dissolved at the time of the distribution, to satisfy the preferential rights of other Members, if any, upon dissolution that are superior to the rights of the Member receiving the distribution.

(b) The Managers may base a determination that a distribution is not prohibited on any of the following:

14.26. "Involuntary Bankruptcy" has the meaning set forth in the definition of "Bankruptcy" above.

14.27. "Issuance Items" has the meaning set forth in Section 7.3(h) hereof.

14.28. "Liquidating Event" has the meaning set forth in Section 10.1 hereof.

14.29. "Manager" means each of John Schwartz and Heidi Barrett, and any other Person who has become a Manager pursuant to the terms of this Agreement, and who has not ceased to be a Manager pursuant to the terms of this Agreement. "Managers" means all such Persons. Each Member shall be entitled to elect one (1) Manager and each Manager shall be entitled to one (1) vote, each such vote being entitled to equal weight.

14.30. "Member" means any Person (i) who is referred to as such in the first paragraph of this Agreement or who has become a Member pursuant to the terms of this Agreement, and (ii) who holds an Interest. "Members" means all such Persons. All references in this Agreement to a majority or a specified percentage of the Members shall mean Members whose combined Interests represent more than fifty percent (50%) or such specified percentage, respectively, of the Interests then held by all Members.

14.31. "Member Nonrecourse Debt" has the meaning set forth in Section 1.704-2(b)(4) of the Regulations.

14.32. "Member Nonrecourse Debt Minimum Gain" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if such Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Section 1.704-2(i)(3) of the Regulations.

14.33. "Member Nonrecourse Deductions" has the meaning ascribed to the term "partner nonrecourse deductions" in Sections 1.704-2(i)(1) and 1.704-2(i)(2) of the Regulations.

14.34. "Net Cash From Operations" means the gross cash proceeds from Company operations (including sales and dispositions of Property in the ordinary course of business) less the portion thereof used to pay or establish reserves for all Company expenses, debt payments, capital improvements, replacements, acquisitions and contingencies, all as determined by the Managers; provided, however, any reserves for capital improvements or acquisitions must by unanimously approved by all Managers. "Net Cash From Operations" shall not be reduced by depreciation, amortization, cost recovery deductions, or similar allowances, but shall be increased by any reductions of reserves previously established pursuant to the first sentence of this definition of "Net Cash from Operations" and those previously established pursuant to the definition of "Net Cash from Sales or Refinancings."

14.35. "Net Cash From Sales or Refinancings" means the net cash proceeds from all sales and other dispositions (other than in the ordinary course of business) and all refinancings of Property, less any portion thereof used to establish reserves for all Company expenses, debt payments, capital improvements, replacements, acquisitions and